IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| POLLY CREEK ESTATE TRUST, et al<br><br>Plaintiffs,<br><br>vs.<br><br>KNIKATNU, INC., an Alaska Corporation, and TYONEK NATIVE CORPORATION, an Alaska Corporation,<br>Defendants. | Case No. 3:09-cv-00069-TMB<br><br>**O R D E R**<br>**of Summary Judgment** |

## I.  INTRODUCTION

At Docket No. 15, Defendants Knikatnu, Inc. ("Knikatnu") and Tyonek Native Corporation ("Tyonek") moved for summary judgment against Plaintiffs Polly Creek Estate Trust, Karen L. Daugherty as Trustee of the Estate of Elaine Swiss, Tyler Swiss, Jack Swiss, and Karen Daugherty ("Plaintiffs"). Defendants request a ruling from this Court that they are not obligated under the Alaska Native Claims Settlement Act ("ANCSA") to transfer to the Polly Creek Estate Trust a fee interest in an airstrip located near Polly Creek, Alaska, on the west side of the Cook Inlet. The motion has been fully briefed and is ripe for decision.  For the reasons outlined below, Defendants' Motion is **GRANTED.**

## II. BACKGROUND

The Polly Creek Estate Trust ("the Trust") and the Estate of Elaine Swiss are the successors in interest to the assets of John Swiss, who passed away in 2007. The remaining Plaintiffs are the children of John and Elaine Swiss.

John Swiss first came to Polly Creek in 1949. He filed for a 3.4-acre federal homesite near the mouth of Polly Creek on the southwest shore of Cook Inlet, which was patented in 1960. He later inherited an adjacent 77.8-acre homestead from his brother Henry.

Not long after establishing his homestead in the area, Swiss cleared out a rudimentary airstrip on federal property near the homestead. On March 1, 1964, the Bureau of Land Management (BLM) and Swiss entered into a 20-year public airport lease for 2.5 acres of land at the mouth of Polly Creek, which includes the airstrip. The lease was granted with the express purpose that Swiss would "establish a public airport" which would be "available for public use."[1] The lease expired in 1984, and at that point Swiss' interest in the leasehold terminated.

By 1986, the land on which the airstrip sits had been claimed from the federal government by the Cook Inlet Region, Inc. ("CIRI"), an Alaska Native corporation, pursuant to the provisions

---

[1] Dkt 16, Ex. 5 at 1.

of the Alaska Native Claims Settlement Act, 43 U.S.C.A. § 1613.[2] In 1987, CIRI transferred the land to Defendants Knikatnu, Inc. and Tyonek, Inc, in separate parcels, such that the Defendants together own the airstrip site.[3]

Swiss filed successive applications with Defendants in 1988, 1990, and again in 2000 to have the airstrip land transferred to him under the provisions of 43 U.S.C. § 1613(c)(1).[4] In a letter dated December 19, 2000, counsel for Swiss described the land Swiss sought from Defendant Tyonek as a "portion of landing strip near homesite[,]" and listed Swiss' uses of the property as "guiding, air taxi, commercial and subsistence fishing."[5] All of Swiss' applications were rejected.

Swiss passed away in 2007. On March 13, 2008, Defendant Tyonek filed a proposed map of boundaries with the Bureau of Land Management and the BLM approved the map on March 17, 2009.[6] Plaintiffs filed this suit in Alaska Superior Court on March 12, 2009, within the statute of limitations for an action under § 1613(c)(1). Plaintiffs' Complaint asks this Court to enter an

---

[2] Dkt. 16, Ex. 11.

[3] Dkt. 16, Ex. 9;

[4] Dkt. 16 at 9.

[5] Dkt. 16, Ex. 2 at 3.

[6] Dkt. 1, Ex. 1 at 7.

ORDER OF SUMMARY JUDGMENT - 3
3:09-CV-0069-TMB

"injunction requiring [Defendants] to convey to the Trust title in fee to the Polly Creek airstrip, and a permanent easement as to applicable approach clear zones or safety zones for the airstrip[.]"[7]

### III. LEGAL STANDARD

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment in its favor as a matter of law.[8] The moving party bears the initial burden of proof as to each material fact upon which it has the burden of persuasion at trial.[9] This requires the moving party to establish, beyond controversy, every essential element of its claim or defense.[10] "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the same evidence were to be uncontroverted at trial. In such a case, the

---

[7] Dkt. 1, Ex. 1 at 10.

[8] Fed. R. Civ. P. 56 (c).

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[10] *S. Calif. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).

moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."[11]

Once the moving party has met its burden, the nonmoving party must demonstrate that a genuine issue of material fact exists by presenting evidence indicating that certain facts are so disputed that a fact-finder must resolve the dispute at trial.[12] The court must view this evidence in the light most favorable to the nonmoving party, must not assess its credibility, and must draw all justifiable inferences from it in favor of the nonmoving party.[13]

Plaintiffs' counsel acknowledged at oral argument that there was no genuine issue of material fact. At this stage of the litigation, the Court need only determine whether Defendants are entitled to summary judgment as a matter of law.

## IV. DISCUSSION

In their Complaint, Plaintiffs asked this Court to order Defendants to convey the airstrip land to the Trust because they were entitled to such a transfer under 43 U.S.C. § 1613(c)(1). Section 1613 specifies procedures by which an Alaska Native

---

[11] *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[13] *Id.* at 225; *Soldano v. United States*, 453 F.3d 1140, 1143 (9th Cir. 2006).

ORDER OF SUMMARY JUDGMENT - 5
3:09-CV-0069-TMB

corporation may obtain title to Alaskan land to which it is entitled under the Alaska Native Claims Settlement Act, (ANCSA). Once the Native Corporation has obtained land under ANCSA, subsection (c)(1) provides that an individual who occupied those lands as of December 18, 1971, may receive, from the Native corporation, title to the lands they used at that time. This conveyance does not require the payment of consideration.[14] The right to reconveyance is limited, however, to four types of occupancy. The land to which the occupant seeks title must have been used, as of December 1971, "as a primary place of residence, or as a primary place of business, or as a subsistence campsite, or as headquarters for reindeer husbandry[.]"[15] Plaintiffs rest their subsection (c)(1) claims on the assertion that the airstrip "provides access to the plaintiffs' primary place of business and subsistence site at Polly Creek."[16]

Defendants argue in their motion that the airstrip land does not fit any of the purposes stated in § 1613(c)(1). Defendants further argue that the airstrip cannot fall within the reach of subsection (c)(1) because Congress specifically addressed the disposition of "airport sites" in § 1613(c)(4). Plaintiffs oppose

---

[14] 43 U.S.C. § 1613(c)(1).

[15] 43 U.S.C. § 1613(c)(1).

[16] Dkt. 1, Ex. 1 at 9.

ORDER OF SUMMARY JUDGMENT - 6
3:09-CV-0069-TMB

the motion, arguing that "[w]ithout a right of access to the airstrip sought in John Swiss's §14(c)(1) application, plaintiffs will be unable to safely and conveniently gain access to, and use, their patented lands as the primary place of their commercial fishing business and their subsistence campsite[.]"[17]

Although the facts are not generally in dispute, there remains some factual question as to which of John Swiss' many business activities was most prevalent at his Polly Creek homesite. Swiss and his heirs have already been allotted a "primary place of business" for Swiss' guiding activities under subsection (c)(1). In their motion, Defendants assert that Swiss' primary economic activity at Polly Creek was guiding big game hunts, not subsistence fishing. Thus, according to Defendants, the homesite cannot be recognized as a "primary place of business" for Swiss' fishing activities because it was instead used primarily for guiding.[18] Meanwhile, Plaintiffs claim that "[m]uch of Swiss' big game guiding took place on the Alaska Peninsula and in the Interior, while his (and his family's) seasonal commercial fishing and subsistence activities occurred at and in the vicinity of Polly Creek."[19]

---

[17] Dkt. 28 at 15.

[18] Dkt. 16 at 5.

[19] Dkt. 28 at 5.

ORDER OF SUMMARY JUDGMENT - 7
3:09-CV-0069-TMB

The Court need not delve into that factual dispute because, regardless of what business Swiss conducted his Polly Creek campsite, it is undisputed that the airstrip itself was neither a "primary place of business" nor a "subsistence campsite." The airstrip merely provides access to Swiss' Polly Creek homestead, and Plaintiffs' own Complaint establishes that Swiss' fishing operations were conducted at the homestead and the creek itself, not at the airstrip.[20]

Plaintiffs' litigation position is that subsection (c)(1) requires the transfer of an airstrip if that airstrip is necessary for access to land occupied for a purpose listed in subsection (c)(1). But Plaintiffs have failed to cite any authority which supports this assertion. Plaintiffs cite to *Hakala v. Atxam Corp.*, 753 P.2d 1144 (Alaska,1988), in which the owner of a guiding business was held to be entitled to § 1613(c)(1) reconveyance of a cabin that he used for his guiding operations, along with the curtilage to that cabin. The *Hakala* court also held that the plaintiff was entitled to use, "to the same extent as the public," certain public easements which were included in the federal

---

[20] Dkt. 1, Ex. 1 at 6.

government's land grant to the defendant Native corporation.[21] Those public easements included the use of a "bush airstrip."[22]

According to Plaintiffs, *Hakala* stands for the proposition that, if an airstrip "were necessary for the applicant's physical access to the 14(c)(1) site, and this improvement lay within the 'curtilage' as defined and described in *Hakala*[,] it would not be precluded from conveyance[.]"[23] The problem with this reading of *Hakala* is that the airstrip in that case was not held to be part of the cabin's "curtilage," despite being "near" to the plaintiff's cabin.[24] Rather, the plaintiff's access to airstrip was premised on the public easement which was included in the federal land grant, and could have been used by anyone.[25] Plaintiffs argue that if the airstrip in *Hakala* had not already been subject to a public easement, the Alaska Supreme Court would have considered it to be part of the cabin's "curtilage" because "without a right of access to the nearby, existing bush airstrip," a § 1613(c)(1) reconveyance of the cabin and surrounding property "would be worthless, and

---

[21] *Hakala* at 1149.

[22] *Id.*

[23] Dkt. 28 at 12-13.

[24] *Hakala* at 1145.

[25] *Hakala* at 1149.

ORDER OF SUMMARY JUDGMENT - 9
3:09-CV-0069-TMB

meaningless."[26] But as Defendants note, the *Hakala* court specifically rejected the notion that "curtilage" consists of "'access rights to the entire area and reconveyance of the acreage actually utilized by [the plaintiff] in conjunction with'" his business operations.[27] Rather, the *Hakala* court chose to "apply the traditional definition of curtilage," which is not nearly expansive enough to include a nearby airstrip such as that used by Swiss.[28]

Plaintiffs would have the Court read § 1613(c)(1) as requiring Native corporations to convey not only the types of property named in the statute, but also any land necessary for aerial access to that property. This requirement is nowhere to be found in the language of the statute itself. In interpreting a statute, the Court must first look at its plain language.[29] The Supreme Court has held that "'[i[f a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the

---

[26] Dkt. 28 at 15.

[27] *Hakala* at 1149, n. 8.

[28] Black's Law Dictionary defines "curtilage" as "The land or yard adjoining a house, usu. within an enclosure." *Black's Law Dictionary* (8th ed. 2004).

[29] *U.S. v. Neal*, 976 F.2d 601, 602 (9th Cir. 1992) (citing *United States v. Van Winrow*, 951 F.2d 1069, 1072 (9th Cir.1991) (per curiam)).

ORDER OF SUMMARY JUDGMENT - 10
3:09-CV-0069-TMB

absurdity.'"[30] The Court could only read § 1613 in the manner urged by Plaintiffs if any other reading would be absurd.

The statute as written does not lead to absurd results, primarily because Congress has specifically addressed the disposition of airports on Native land in § 1613(c)(4), which reads as follows:

> [T]he Village Corporation shall convey to the Federal Government, State, or to the appropriate Municipal Corporation, title to the surface estate for airport sites, airway beacons, and other navigation aids as such existed on December 18, 1971, together with such additional acreage and/or easements as are necessary to provide related governmental services and to insure safe approaches to airport runways as such airport sites, runways, and other facilities existed as of December 18, 1971[.][31]

Defendants argue that this provision shows that Congress provided only one possible treatment for "public airports" such as the airstrip in this case, which is to transfer them to a governmental body.[32] The Court agrees. A basic principle of statutory construction is that the specific prevails over the general.[33] Congress specifically addressed the disposition of "airports" in

---

[30] *In re Southwest Aircraft Services, Inc.*, 831 F.2d 848, 852 (9th Cir. 1987) (quoting *Church of the Holy Trinity v. United States*, 143 U.S. 457, 460 (1892)).

[31] 43 U.S.C. § 1613(c)(4)

[32] Dkt. 16 at 12.

[33] *Bonneville Power Admin. v. F.E.R.C.*, 422 F.3d 908, 916 (9th. Cir. 2005).

subsection (c)(4). To the extent that much of the Alaskan bush is accessible only through air service, Congress has provided a remedy to ensure that owners of § 1613(c)(1) allotments have a way to reach their property. Thus, the Court cannot read an additional, unspoken, remedy into the provisions of subsection (c)(1).

Plaintiffs argue that, because subsection (c)(4) mentions "airway beacons, and other navigation aids," then "the 'existing airport sites' reference in Section 14(c)(4) is not to rudimentary, minimally-cleared bush 'airstrips,' but instead to the typical constructed and improved public airport with installed beacons, navigation aids, related services, and designated safe approach zones."[34] First of all, the Court notes that subsection (c)(4) does not refer to "related services" provided by the airport. It refers to easements which are "necessary to provide related governmental services".[35] Thus, it makes no sense for Plaintiffs to claim that subsection (c)(4) only covers an "improved public airport with . . . related services," as if only full-service airports were included. The statute says no such thing. Likewise, there is no reference in the statute to "designated safe approach zones."

In any event, the references in subsection (c)(4) to "airway beacons" and "other navigational aids" are terms of inclusion, not

---

[34] Dkt. 28 at 16.

[35] 43 U.S.C. § 16139(c)(4).

exclusion. By their own terms, they merely ensure that any subsection (c)(4) transfer of an airport include the land on which the appurtenant navigational aids sit. Certainly the airstrip is not what most people imagine when they think of an "airport." However, it was this very airstrip that John Swiss once leased on the express condition that he "establish a public airport."[36] There are many such "airports" in Alaska, and the Court will not presume that Congress inadvertently forgot to exclude them from coverage under § 1613(c)(4). Even if there are airstrips which do not fall under the definition of an "airport" for purposes of subsection (c)(4), the Court must conclude that an airstrip which was expressly maintained as a "public airport" in 1971 does fall within that definition.

The Court notes in passing that it cannot be said that Plaintiffs' ownership of the Polly Creek homestead would be "worthless" to them if they do not receive title to the airstrip. There are ways for an Alaskan homesteader to gain access to his subsection (c)(1) lands even if the closest airstrip is on Native corporation land, whether by paying for an easement, through the acquiescence of the corporation, or by some other arrangement. Neither John Swiss nor Plaintiffs have held title or any leasehold interest in the airstrip since 1984. Yet Plaintiffs assert that

---

[36] Dkt 16, Ex. 5 at 1.

ORDER OF SUMMARY JUDGMENT - 13
3:09-CV-0069-TMB

they have "since 1949 used these lands as the base for their seasonal commercial fishing business and a seasonal campsite for their subsistence fishing and hunting activities."[37] Apparently, their lack of ownership or leasehold interest in the airstrip has not led them to abandon the homestead.

Indeed, Plaintiffs' counsel indicated at oral argument that Plaintiffs have continued to use the airstrip, although they have been "verbally admonished" not to do so by certain employees of Defendants. In the Court's view, there is no reason why the parties cannot arrive at some reasonable accommodation which would allow Plaintiffs to use the airstrip with Defendants' permission.

As a further aside, Plaintiffs' counsel was quite correct in asserting that Knikatnu's laches argument, asserted for the first time in its reply brief, should not be entertained because it was not raised in the original motion. The Court will not rule upon the laches issue, which is unrelated to Defendants' other arguments for summary judgment.

The Ninth Circuit has held that "any ambiguity in a statute must be interpreted liberally in favor of the Native tribes."[38] Given the plain language of § 1613, the Court will not read into

---

[37] Dkt. 28 at 4.

[38] *Ketchikan v. Cape Fox*, 85 F.3d 1381, 1385 (9th Cir. 1996); citing *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985).

the statute more rights for a subsection (c)(1) applicant than those expressly provided by Congress. The airstrip in this case has never been used for any of the purposes for which Congress has authorized conveyance under 43 U.S.C. § 1613(c)(1).

## V.  CONCLUSION

The airstrip near Plaintiffs' Polly Creek homestead does not fit any of the purposes for which a party may request conveyance under 43 U.S.C. 1613(c)(1). It may be an "airport" which is transferrable to the State of Alaska under 43 U.S.C. 1613(c)(4), but Plaintiffs have not included a subsection (c)(4) claim in their complaint. For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment at **Docket 15.**

ENTERED at Anchorage, Alaska, this 13th day of September, 2010.

>                             /s/ TIMOTHY BURGESS
>                             United States District Judge